[L.A. No. 31725. June 7, 1984.]

RICHARD PALMA, Plaintiff and Appellant, v.
U.S. INDUSTRIAL FASTENERS, INC., et al.,
Defendants and Respondents.

COUNSEL

Lee G. Lipscomb, Brian D. Depew and Engstrom, Lipscomb & Lack for Plaintiff and Appellant.

David C. Werner, Douglas M. Degrave and Stockdale, Peckham, Estes & Werner for Defendants and Respondents.

OPINION

GRODIN, J.—We are called upon to consider the circumstances and procedure appropriate to the issuance, by an appellate court, of a peremptory writ of mandate in the "first instance," i.e., without prior issuance of an alternative writ.

Plaintiff in this negligence action appeals from a summary judgment for defendants which the trial court entered in obedience to such a peremptory writ from the Court of Appeal. The petition which defendants filed in the Court of Appeal did not seek a peremptory writ in the first instance, and the court did not notify plaintiff that such relief was being considered. The record does not reflect an invitation by the court to respondent or real party in interest to file opposition, and none was filed. Finally, instead of an order for the writ, the appellate court issued a document purporting to constitute the writ itself.

Plaintiff questions the propriety of the summary judgment, contending that there are triable issues of material fact, but the preliminary question we must decide is whether he is precluded from raising that question now, by reason of his failure to seek review of the appellate court's prior action.

Defendants argue that when plaintiff failed to petition this court for a hearing the "writ" became final, was res judicata, and constituted the law of the case.

For reasons we shall explain, a peremptory writ ought not be issued in the first instance by an appellate court unless the respondent, and real party in interest, have notice that such a procedure is being considered, or at least requested, and have either filed a response on the merits or been given the opportunity to do so. Moreover, the proper procedure is for the appellate court to issue an *order* or *decision* calling for issuance of the writ, rather than the writ itself, so as to provide opportunity for review before the writ becomes operative. Since the form in which the writ was issued in this case combined elements of both an order and a writ, and because the order was not filed as an order or decision of the court, it did not appear, at least, to be a decision subject to the provisions of rule 28(b) of the California Rules of Court. Accordingly, we shall conclude that plaintiff's failure to petition this court for a hearing on the writ did not require that the writ be given res judicata effect. Reaching the merits of the appeal, we shall also conclude that because triable issues of fact are present the judgment must be reversed.

### Procedural History

On April 25, 1980, Richard Palma, appellant herein, filed a complaint for damages in the Los Angeles County Superior Court. Count one sought recovery for personal injuries naming as defendants U.S. Industrial Fasteners, Inc. (Fasteners), Maynard Greenberg, Victor R. Castro, David Valdez, and "Does 1 through 50 inclusive." That count alleged that on May 6, 1979, Fasteners owned a truck which Castro and Valdez drove negligently causing it to run over and injure Palma.

Count two alleged negligent hiring and supervision of, and entrustment to, Castro. Count three alleged negligent supervision by three "Doe" defendants of premises on which the conduct of certain Does constituted a threat to the safety of others and caused damage to Palma.

Fasteners moved for summary judgment pursuant to Code of Civil Procedure section 437c,[1] supporting the motion with affidavits showing that Castro, a former employee of Fasteners, had stolen the truck and had driven it to the home of Castro's former wife where the injury to Palma occurred. Fasteners asserted that Castro had not been negligent, that he was neither a permissive user of the truck nor an agent or employee of Fasteners, and

---

[1] All further references to code sections are to the Code of Civil Procedure unless otherwise indicated.

that as the victim of a theft Fasteners was neither negligent nor liable for the injury caused by the stolen truck.

Castro also moved for summary judgment, but on April 26, 1982, the trial court denied both motions[2] in an order reciting that triable issues of material fact were presented on the issue of negligence.

Fasteners and Greenberg thereupon filed in the Court of Appeal their petition for writ of mandate contending that the superior court had abused its discretion in denying their motion for summary judgment. They prayed for issuance of an alternative writ of mandate and, upon the return thereof, issuance of a peremptory writ of mandate commanding the superior court to set aside its order and enter a new order granting the motion. The petition was filed on July 14, 1982. No alternative writ issued, but on the following day the court issued a stay of the superior court proceedings as to the petitioners only. On an unspecified date the presiding justice wrote on the cover of the petition a directive that a "writ issue as per order," below which were entered his signature and those of two other justices of the division. On July 26, 1982, the clerk of the division issued a peremptory writ commanding the superior court to grant the motion for summary judgment. The initials of the three justices were entered below the attestation of the clerk. In the body of the writ there also appeared an order directing: "Pending the finality of this writ, the stay previously issued by this court shall remain in full force and effect."[3]

The superior court complied with the writ on October 7, 1982, by entry of a minute order granting summary judgment. This appeal followed.

## I.

▇▇▇ The Court of Appeal has original jurisdiction over petitions for writs of mandate, jurisdiction which it shares with this court and the superior courts. (Cal. Const., art. VI, § 10.) In the exercise of that jurisdiction it may, upon ascertaining that the petition is in proper form and states a basis for relief, issue an alternative writ which commands the respondent to act in conformity with the prayer of the petition or, alternatively, show cause before the Court of Appeal why it should not be ordered to so act. (§ 1087.)[4] The respondent may choose to act in conformity with the prayer,

---

[2]For reasons that are not apparent from the record the motion by Fasteners was treated as one by both Fasteners and Greenberg.

[3]A copy of this document is attached as an exhibit to this opinion.

[4]Section 1087: "The writ may be either alternative or peremptory. The alternative writ must command the party to whom it is directed immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed, or to show cause before the court at a time and place then or thereafter specified by court order why he has not done so. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he has not done as commanded must be omitted."

in which case the petition becomes moot; otherwise, the respondent and/or the real party in interest may file a written return setting forth the factual and legal bases which justify the respondent's refusal to do so. (§ 1089; Cal. Rules of Court, rule 56(c).) ■ ■ ■ ■ The matter is then a "cause" to be decided "in writing with reasons stated," as required by article VI, section 14 of the Constitution.[5] ■ The issues joined by the petition and return must therefore be decided by the Court of Appeal in a written opinion. (*People* v. *Medina, supra,* 6 Cal.3d 484, 490.) If the court concludes that a peremptory writ of mandate should be granted, the opinion will direct that it issue. If not, the petition will be denied.

In lieu of an alternative writ, the Court of Appeal is authorized by section 1088 to issue a peremptory writ in the first instance, thus dispensing with the need to await the filing of a return, oral argument, and the preparation of an appellate opinion.[6] Although this procedure was once considered appropriate only when unusual circumstances required immediate action (see *Bolles* v. *Superior Court* (1971) 15 Cal.App.3d 962 [93 Cal.Rptr. 719]; but see *People* v. *Turner* (1850) 1 Cal. 144, 151), in recent years Courts of Appeal have increasingly resorted to issuance of a peremptory writ in the first instance when it appears that the petition and opposing papers on file adequately address the issues raised by the petition, that no factual dispute exists, and that the additional briefing that would follow issuance of an alternative writ is unnecessary to disposition of the petition. (See, e.g., *Leach* v. *Superior Court* (1980) 111 Cal.App.3d 902 [169 Cal.Rptr. 42]; *Blumenthal* v. *Superior Court* (1980) 103 Cal.App.3d 317 [163 Cal.Rptr. 39]; *Tahoe Forest Inn* v. *Superior Court* (1979) 99 Cal.App.3d 509 [160 Cal.Rptr. 314].)

A court's authority to issue a peremptory writ in the first instance is limited, however, to those cases in which the opposing parties have received

---

[5] Article VI, section 14: ". . . [¶] Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." The summary denial of a petition for writ of mandate without issuance of an alternative writ does not determine a cause. (*People* v. *Medina* (1972) 6 Cal.3d 484, 490 [99 Cal.Rptr. 630, 492 P.2d 686]; *Funeral Dir. Assn.* v. *Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104, 106 [136 P.2d 785].)

[6] Section 1088: "When the application to the court is made without notice to the adverse party, and the writ is allowed, the alternative must first be issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance. With the alternative writ and also with any notice of an intention to apply for the writ, there must be served on each person against whom the writ is sought a copy of the petition. The notice of the application, when given, must be at least ten days. The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not."

Because the decision to grant a peremptory writ, unlike the summary denial of a petition seeking a writ, is determinative of a "cause" within the meaning of article VI, section 14 (see fn. 5, *ante*; see *People* v. *District Court of Appeal* (1924) 193 Cal. 19, 20 [222 P. 353]), the order directing that it issue must, however, "be in writing with reasons stated."

"due notice" 10 days beforehand. (§ 1088.) That notice, like the alternative writ, must be served on each person against whom the writ is sought. (*Ibid.*) An application for such a writ is required to be accompanied by proof of service upon both the respondent and the real party in interest, and both are given five days within which to file points and authorities in opposition. (§ 1107.)[7]

The Code Commissioner's notes to section 1088 indicate that a 1907 amendment to that section "[r]equires a copy of the petition for a writ of mandate to be served with the alternative writ, or with the *notice of application for the peremptory writ*" (italics added), and an early case makes reference to a "relator" (petitioner) who "proceeds by petition and *notice for the peremptory writ,* without procuring an alternative writ." (*People* v. *Supervisors of S. F.* (1865) 27 Cal. 655, 684, italics added; see also *People* v. *Turner, supra,* 1 Cal. 143, 151 ["notice of the application having been given, and copies of the papers served, the court may award either an alternative or peremptory mandamus, according to the exigency of the case"].) Thus, it appears that the notice requirement in section 1088 was intended to place the respondent and real party in interest on notice, in the absence of an alternative writ, that a peremptory writ might issue.

Defendants contend that a formal request for issuance of a peremptory writ in the first instance is unnecessary because a party served with a petition for writ of mandate should be charged, as a matter of law, with knowledge of that possibility. Given the rarity of that procedure, however, there is a large gap between possibility and practical anticipation. Express notice at least serves to close the gap, particularly in the case of the litigant who may not be familiar with appellate practice.

We are mindful that a formal request for issuance of a peremptory writ in the first instance does not provide the same level of notice as the issuance of an alternative writ, since the latter conveys a tentative opinion of the court that a peremptory writ might be in the offing, while the former reflects merely the hopes of a litigant. When responding to a petition for an alter-

---

[7]Section 1107: "When an application is filed for the issuance of any prerogative writ, the application shall be accompanied by proof of service of a copy thereof upon the respondent and the real party in interest named in such application. . . . Within five days after service and filing of the application, the real party in interest or the respondent or both may serve upon the applicant and file with the court points and authorities in opposition to the granting of the writ.

"The court in which the application is filed, in its discretion and for good cause, may grant the application ex parte, without notice or service of the application as herein provided. [¶] . . . ."

Sections 1088.5 and 1089.5, added in 1982, as amended in 1983, now provide that if a petition filed in a trial court does not pray for an alternative writ, the time within which the respondent, and by implication the real party in interest, may reply is 30 days.

native writ in the Court of Appeal, the litigant often confronts a practical dilemma. Faced with the possibility of action ranging from outright denial of the petition to the issuance of a peremptory writ in the first instance, the real party may feel obliged to respond with a full scale barrage of legal armament under circumstances in which a narrowly targeted argument, or perhaps no argument at all, would suffice.

We therefore strongly approve the practice which, we are informed, exists in some districts and divisions of the Courts of Appeal, to routinely request informal opposition prior to the issuance of an alternative *or* peremptory writ. By eliminating the necessity for full scale response where such a response is unnecessary, such a practice helps to reduce the cost of litigation to the parties; and by encouraging opposition when the court is about to act affirmatively on a petition, it helps to conserve judicial resources as well. In the case of a peremptory writ in the first instance, such a practice helps also to assure that the respondent, or real party, has had full opportunity to oppose what may turn out to be the final, and to his interests adverse, resolution of a legal issue.

■ We conclude that "due notice" under section 1088 requires, at a minimum, that a peremptory writ of mandate or prohibition not issue in the first instance unless the parties adversely affected by the writ have received notice, from the petitioner or from the court, that the issuance of such a writ in the first instance is being sought or considered. In addition, an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected.

In this case neither of those procedural safeguards is present. Their absence is not determinative of the question before us, however, since the trial court has already acted in accordance with the writ. We turn, therefore, to consideration of the asserted procedural defect in the writ itself, and to the impact on the instant appeal from the judgment entered pursuant to that writ.

## II.

When a Court of Appeal decides to issue a peremptory writ after first having issued an alternative writ, the opinion will direct that it issue. Formerly, under California Rules of Court, rule 24(a), that decision could not become final as to the Court of Appeal for 30 days after filing with the clerk, after which the parties could seek further review by petition for hearing in this court. A recent amendment to the rules now permits the Court of Appeal to direct also that its decision granting the peremptory writ shall

become final "as to that court within a stated period less than 30 days or that it shall be final as to that court immediately if early finality is necessary to prevent mootness or to prevent frustration of the relief granted."[8] ■ In any event, *it is only when the decision becomes final as to both the Court of Appeal and this court that the peremptory writ actually issues.* In most cases, issuance of the writ itself is unnecessary because the party to whom it would be directed acts in conformity with the written opinion of the court when it becomes final. If, however, that party does not do so, the petitioner may request a writ, and its issuance is then a ministerial function of the clerk of the court. (See Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 18.1 and 18.22, pp. 430-431 and 454-455.) ■ Once the writ issues, it is served on the person commanded to act in the same manner as a summons (§ 1096) and must be obeyed on pain of fine or contempt if the person does not promptly comply. (See, e.g., *Housing Authority* v. *City of Los Angeles* (1953) 40 Cal.2d 682 [256 P.2d 4]; see also *Ross* v. *Superior Court* (1977) 19 Cal.3d 899 [141 Cal.Rptr. 133, 569 P.2d 727]; *City of Vernon* v. *Superior Court* (1952) 38 Cal.2d 509 [241 P.2d 243]; *City of Culver City* v. *Superior Court* (1952) 38 Cal.2d 535 [241 P.2d 258].)

The same distinction between the judgment or decision directing that the writ issue, and the writ itself, applies when the peremptory writ is issued in the first instance. In both situations a judgment or order directing that the writ issue must be entered by the court before the writ may be issued by an appellate court. (§ 1095; *People* v. *Berger* (1955) 44 Cal.2d 459, 462 [282 P.2d 509]; cf. *Healy* v. *Stationers Corp.* (1964) 228 Cal.App.2d 601 [39 Cal.Rptr. 679].)[9] ■ That judgment or order is an appealable judg-

---

[8]Rule 24(a): ". . . A decision of a Court of Appeal becomes final as to that court 30 days after filing, except that the decision becomes final as to that court immediately after filing upon the denial of a petition for a writ within its original jurisdiction or a writ of supersedeas, without issuance of an alternative writ or order to show cause . . . ."

Subsequent to the issuance of the writ in this case, subdivision (c) was added granting the authority to shorten the time for finality as to the Court of Appeal. That subdivision provides: "Notwithstanding subdivision (a), a Court of Appeal may order that a decision granting a peremptory writ within its original jurisdiction shall become final *as to that court* within a stated period less than 30 days or that it shall be final *as to that court* immediately if early finality is necessary to prevent mootness or to prevent frustration of the relief granted." (Italics added.)

[9]A superior court may direct that a writ of mandate issue contemporaneously with rendition of the judgment (see *Weisman* v. *Board of B. & S. Commrs.* (1927) 85 Cal.App. 493 [259 P. 768]), and in one recent case in which an appeal was attempted from a superior court writ of mandate, the Court of Appeal suggested that the writ issued in that case might be itself treated as a judgment. (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 456 [129 Cal.Rptr. 216].) However, section 1095 requires that a judgment precede issuance of a writ of mandate. Therefore, when that judgment is rendered by a Court of Appeal both the California Constitution which authorizes this court to transfer a cause pending in a Court of Appeal to itself before the decision becomes final (art. VI, § 12) and the Rules of Court preclude issuance of the writ before the judgment or order directing that it issue has been filed and has become final.

ment if made by a superior court (§ 1110) or is a decision subject to a petition for hearing in this court if made by a Court of Appeal. (Cal. Rules of Court, rule 28.) A Court of Appeal lacks authority either to issue a peremptory writ without prior entry of an order directing its issuance or to make such an order final forthwith, thereby to permit the immediate issuance of the writ itself without opportunity for review of the order by this court.

In this case the document issued by the Court of Appeal was a hybrid, unknown to jurisprudential taxonomy. It was indisputably a writ. It was so entitled; it was attested by the clerk of the Court of Appeal; and it bore the seal of the clerk. All of these indicia are attributes of a writ, not of a judicial decision or order. The document also bore the initials of those justices who directed that it issue, and it recited that a previously issued stay was to remain in effect "pending finality of this writ." The document was not, however, filed with the clerk as a decision or order; nor had there been a prior order filed directing that a writ issue.[10] Plaintiff was thereby denied any opportunity to seek a hearing in this court upon the filing of an order for the issuance of the writ.

█ For these reasons we conclude that the doctrine of res judicata does not bar consideration of the merits of Fasteners' motion for summary judgment. █ That doctrine, which precludes relitigation by the parties of a cause of action finally determined by a court of competent jurisdiction, "'rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had opportunity to litigate the same matter in a formal action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.'" (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972 [104 Cal.Rptr. 42, 500 P.2d 1386], quoting from *Panos* v. *Western Packing Co.* (1943) 21 Cal.2d 636, 637 [134 P.2d 242].) █ In any case in which the court issues an alternative writ and renders a written decision granting or denying relief, that decision has ordinary res judicata effect. (*Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 901, fn. 3 [160 Cal.Rptr. 124, 603 P.2d 41]; *Overstreet* v. *County of Butte* (1962) 57 Cal.2d 504, 507 [20 Cal.Rptr. 631, 370 P.2d 335].) █ Here, however, plaintiff had no notice that a peremptory writ was sought or might issue, there was no alternative writ, and the document issued by the Court of Appeal was not preceded by a decision or

[10]The handwritten order on the face of the petition was never entered by the clerk or transmitted to the parties as required by California Rules of Court, rule 24(a), and the document entitled "Peremptory Writ" issued well before that order could have become final had it been entered.

order subject to petition for hearing in this court.[11] Consequently, the doctrine of res judicata need not be applied. (See *Greenfield* v. *Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1].)

■ Similar considerations lead us to reject Fasteners' alternative argument that reconsideration of the merits is barred by the law of the case doctrine. Although that doctrine is generally applicable in writ proceedings as well as appeals (see *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257, 267, fn. 5 [161 Cal.Rptr. 475, 604 P.2d 1365]), it has no application here where the plaintiff had no notice that the writ might issue and opportunity for review by this court on petition for hearing was foreclosed by the manner in which the writ issued.

### III.

We turn now to plaintiff's argument that entry of summary judgment for Fasteners was error.

Entry of summary judgment is authorized by section 437c, subdivision (c), on motion of any party made in accordance with subdivisions (a) and (b), "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ■ Because summary judgment is a drastic procedure all doubts as to the propriety of granting a motion for summary judgment should be resolved in favor of the party opposing the motion. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953].)

■ Fasteners based its motion for summary judgment in part on the rule enunciated by this court in *Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23]: ordinarily the duty of an owner of an automobile to use due care in the maintenance or operation of that automobile does not encompass a duty to protect others from the negligent operation of that vehicle by a thief, even when the owner has left the keys in the ignition. Plaintiff opposed the motion arguing that special circumstances present in this case established such a duty.

---

[11]Rule 28: "(a) Within 30 days after a decision of a Court of Appeal becomes final as to that court, the Supreme Court, on its own motion, or on petition as provided in subdivision (b), may order the cause transferred to itself for hearing and decision, and within the original 30-day period or any extension thereof the Supreme Court may for good cause extend the time for one or more additional periods not to exceed a total of an additional 60 days.

"(b) A party seeking a hearing must serve and file a petition therefor within 10 days after the decision of the Court of Appeal becomes final as to that court . . . ."

In his opposition to the motion, plaintiff argued that Fasteners' large commercial truck had been left unlocked with keys in it overnight in an open parking lot located in a high crime industrial area, and thus the special circumstances necessary to impose a duty of care were present. The declaration of Greenberg attached to Fasteners' motion, and the deposition of Castro relied on by plaintiff reflect triable issues as to whether Fasteners' trucks are locked at night or left with keys in them. Greenberg declared that the trucks are locked at the end of each day, and at no time are the keys left in them. Castro testified at his deposition that when he went to Fasteners' premises on May 6, 1979, he found the first truck unlocked and took the second which was unlocked, had a window open, and had keys inside.

The opposition was supported also with a declaration by Thomas Reddin, owner of a security service and former Chief of Police of Los Angeles stating that the City of Vernon, in which the truck was stolen, has an extremely high transient population, numerous bars, graffiti indicative of gang-type activity, and a high incidence of crime.[12] The court was also asked to take judicial notice of the deposition of Victor Castro in which Castro had testified that the truck he had been driving was a flatbed, stake truck that he had taken from the open unfenced lot in front of Fasteners' property. The door and window of the truck were open. He had first entered another truck which was also open. The keys to the second truck were in the glove compartment.

Taken together the evidence in these documents is sufficient to establish triable issues of fact as to whether the circumstances in which Fasteners' truck was left created a foreseeable risk of harm that was unreasonable and thus imposed on Fasteners a duty of care to prevent harm to third persons by refraining from creating that risk.

The evidence distinguishes this case from *Richards* v. *Stanley, supra,* 43 Cal.2d 60. In a case with similar facts we noted that in *Richards* the owner had left the car "in a position where it could harm no one and no harm occurred until it had been taken by a thief." (*Hergenrether* v. *East* (1964) 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164].) We recognized in *Hergenrether* that ordinarily in the absence of a special relationship there is no duty

---

[12]Fasteners claims that this declaration was objected to as inadmissible hearsay based on out of date statistics. The record does not confirm the assertion that this objection was made or, if made, was sustained. Not only does Fasteners fail to support the assertion with citation to the record, but the minutes of the superior court recite that the motion was submitted on the points and authorities and declarations filed, and upon consideration of these items was denied.

to control the conduct of a third person so as to prevent him from harming another, but where special circumstances exist in which there is "a greater potentiality of foreseeable risk or more serious injury, or [which] require a lesser burden of preventative action," the risk is deemed unreasonable and imposes a duty to third persons. (61 Cal.2d at pp. 443-444.)

In *Hergenrether* the plaintiffs had been injured when a two-ton truck owned by the defendant, but driven by a thief, collided head-on with the vehicle in which plaintiffs were riding. The truck had been stolen the evening before the accident when left unlocked, with the key in the ignition, by employees of the owner who had authorized their use of the truck. We found those circumstances to be analogous to those in *Richardson* v. *Ham* (1955) 44 Cal.2d 772 [285 P.2d 269], in which a 26-ton bulldozer was stolen for a joyride by 3 inebriates, and those in *Murray* v. *Wright* (1958) 166 Cal.App.2d 589 [333 P.2d 111], where a used car dealer purposely left keys in the ignitions of cars on his lot. In *Richardson* the enormity of the potential harm, and in *Murray* the facility with which a potential wrongdoer could learn of and take advantage of the virtual invitation to theft were circumstances sufficient to warrant imposition of a duty to third parties to prevent the foreseeable harm. Those circumstances are merely illustrative, however, of conduct which may create foreseeable risk of harm and impose liability if that risk becomes a reality. "The special circumstances present in *Richardson* and *Murray,* and those suggested in *Richards* are not, of course, the only circumstances which justify the imposition of liability— rather each case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." (*Hergenrether* v. *East, supra,* 61 Cal.2d 440, 445.)

Factors which distinguished the conduct in *Hergenrether,* and were held sufficient to establish a duty, are also present here. They included the area in which the truck had been parked—one frequented by persons who had little respect for the rights of others, and populated by alcoholics; the intent that the truck remain in the location for a relatively long period of time— overnight; the size of the vehicle—rendering it capable of inflicting more serious injury or damage if not properly controlled; and the fact that safe operation of a half-loaded two-ton truck was not a matter of common experience. These factors together led to a conclusion there, as similar factors may here, that a foreseeable risk of harm was posed by the truck left with its keys in the ignition or cab warranting imposition of a duty on the owner or operator to refrain from exposing third persons to the risk.

Whether Fasteners could foresee that leaving its truck overnight, unlocked, on a lot adjacent to the street, in this industrial city with a transient population and a high crime rate, was an invitation to theft (see *Enders* v. *Apcoa, Inc.* (1976) 55 Cal.App.3d 897 [127 Cal.Rptr. 751]) by persons not competent to safely operate the trucks and who might cause serious injury or damage to third persons and their property while attempting to operate the trucks is a question of fact for the jury to determine.

The "special circumstance" to which we look in determining whether the owner operator of a vehicle owes a duty to third parties in the manner in which the vehicle is secured when not in use is nothing more than a test of foreseeability of harm. ■ In negligence a defendant may be liable for injuries caused by his failure to use reasonable care in situations in which he owes a duty to the injured person. "[I]n considering the existence of 'duty' in a given case several factors require consideration including 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; cf. *Richards* v. *Stanley, supra,* and *Hergenrether* v. *East* (1964) 61 Cal.2d 440.)" (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 750 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) ■ Inasmuch as foreseeability of harm is in most cases, this one included, a question of fact (*Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 705 [194 Cal.Rptr. 805, 669 P.2d 41]), and triable issues of fact as to foreseeability were present here, the motions by defendants for summary judgment should not have been granted.[13]

The motion to dismiss the appeal is denied. The judgment is reversed and the cause is remanded to the superior court with directions to vacate its order granting defendants' motions for summary judgment, to deny those motions, and to proceed in conformity with the views expressed in this opinion.

---

[13]We note that two Court of Appeal opinions have questioned the continued viability of *Richards* in light of subsequent legal developments and empirical research (*Hosking* v. *San Pedro Marine, Inc.* (1979) 98 Cal.App.3d 98, 104-105, fn. 4 [159 Cal.Rptr. 369]; *Kiick* v. *Levias* (1980) 113 Cal.App.3d 399 [169 Cal.Rptr. 859]). The parties here have not argued that question, however, and in light of our conclusion we have no occasion to reach it.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

---

EXHIBIT

In the Court of Appeal of the State of California
Second Appellate District
Division Two

TO THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES:

The verified petition for writ of mandate filed July 14, 1982 having been read and considered and good cause appearing therefor as a matter of law,

Respondent court is required to vacate and set aside the order made on or about April 26, 1982 denying petitioners' motion for summary judgment, and enter a new and different order granting said motion. (*Richards* v. *Stanley* (1954) 43 Cal.2d 60 [271 P.2d 23]).

Pending the finality of this writ, the stay previously issued by this court shall remain in full force and effect.

WITNESS THE HONORABLE LESTER WM. ROTH, PRESIDING JUSTICE of Division Two of the Court of Appeal of the State of California, Second Appellate District.

ATTEST my hand and the seal of this court this 26th day of July, 1982.
CLAY ROBBINS, JR., Clerk

By_____
Deputy Clerk