Filed 2/7/24  Ramirez v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| EUGENE S. RAMIREZ, | C099816 |
| Petitioner, | (Super. Ct. No. 96F00548) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

Eugene S. Ramirez filed a petition for writ of mandate asserting that respondent Sacramento County Superior Court abused its discretion in refusing to recall his prison sentence after the Department of Corrections and Rehabilitation (CDCR) recommended

1

it do so under Penal Code section 1172.2.[1]  Specifically, petitioner argues respondent court abused its discretion by basing its ruling on a finding that he "still poses a danger to the community and is likely to commit a super strike."  We agree.

BACKGROUND

In 1988, the trial court sentenced petitioner to 5 years in prison following a conviction for auto theft.  In 1989, while petitioner was serving his sentence in that case, the trial court sentenced him to an additional 40 years in state prison following his conviction for two counts of sodomy by force, two counts of oral copulation by force, and various enhancements arising from a single incident involving a fellow inmate.  In 1995, while incarcerated, the trial court sentenced petitioner to an additional 25 years to life following his conviction for possession of a weapon in prison.  Petitioner's criminal history, which dates back to 1966, and his documented institutional behavior, reflect a history of offenses involving force, violence and assault.  His most recent conviction was in 1995 for possessing a weapon in prison, and his most recent disciplinary actions were for fighting in 2018 and battery on an inmate with a weapon in 2015.

In September 2023, CDCR's Health Care Services Director recommended that respondent court recall petitioner's sentence under the new compassionate release provisions at section 1172.2.  Assembly Bill No. 960 (2021-2022 Reg. Sess.), which added section 1172.2 and amended the procedures for compassionate release recommendations from CDCR, became effective on January 1, 2023.  (Stats. 2022, ch. 744, § 3.)  As relevant here, section 1172.2 provides that if the statewide chief medical executive determines that an inmate "has a serious and advanced illness with an end-of-life trajectory," CDCR shall recommend to the trial court that the inmate's sentence be recalled.  (§ 1172.2, subd. (b)(1); *id.* subd. (a).)  If the trial court agrees with the chief medical executive's determination, "a presumption favoring recall and

---

[1] Undesignated statutory references are to the Penal Code.

resentencing" is created, which may be overcome only if the trial court finds that the petitioner is likely to commit a new super strike offense within the meaning of section 1170.18, subdivision (c), which includes certain enumerated sexually violent offenses, lewd and lascivious acts with a child under 14, and homicide. (§ 1172.2, subd. (b); see § 667, subd. (e)(2)(C)(iv)(I), (III), (IV); see also *Nijmeddin v. Superior Court* (2023) 90 Cal.App.5th 77, 80 (*Nijmeddin*); *People v. Moine* (2021) 62 Cal.App.5th 440, 449-450 (*Moine*).)

In the recommendation to respondent court, the Health Care Services Director explained that petitioner, who is 76 years old, has stage IV prostate cancer that has spread to other areas of his body, and physicians had determined he has a serious and advanced illness with an end-of-life trajectory. According to the recommendation, petitioner was ambulatory for short distances with a walker. The recommendation stated that if released, petitioner planned to reside at Missionaries of Charity, located in Pacifica, California, and its director was aware of petitioner's medical condition as well as his prior convictions. A "Diagnostic Study and Evaluation Report Pursuant to the Provisions of Penal Code Section 1170.03(a)(1)" prepared by a correctional counselor, and approved by the warden of the California Medical Facility where petitioner was housed in the hospice unit, concluded that although petitioner has a "history of offenses involving force, violence, and assault," he "does not retain the capacity to commit or to influence others to commit criminal acts that endanger public safety."

As required by section 1172.2, on September 14, 2023, respondent court held a hearing to consider whether petitioner's sentence should be recalled. (§ 1172.2, subd. (c).) The People opposed petitioner's release, arguing "he presents a significant risk of danger to the community, in particular sexual assaults if he is released." The People pointed to petitioner's "extremely violent record," the fact the release facility is not a locked facility, and that there are schools, including an elementary school, in the surrounding area. The People also asserted that petitioner could harm volunteers, other patients, and caregivers at the release facility. Defense counsel responded that while petitioner's sexual assault of a fellow inmate was "shocking and horrific," it occurred

35 years ago, and petitioner "no longer possesses the kinds of physical attributes required for [such] assaultive conduct." Respondent court appeared to agree, at least in part. It observed that "the underlying crime of forced sodomy is fairly problematic," but "it was many years ago and there's been no similar conduct since those dates . . . ." The respondent court further noted that while "[t]here's been some write-ups, . . . some assaults" during petitioner's incarceration, "that's to be expected in a prison setting in some respects." While respondent court indicated it had "some concerns" about the release facility's location in relation to schools, it was "not sure . . . if it's possible to find a location that doesn't have some similar concerns" and the facility "does seem to be at least in compliance with . . . [s]ection 290," apparently referring to petitioner's status as a sex offender and the registration requirements and residentiary restrictions associated therewith.

Respondent court ultimately declined to recall petitioner's sentence. It found that while petitioner "does have an end-of-life trajectory," "he still poses a danger to the community and is likely to commit a super strike," citing petitioner's "underl[y]ing commitment as well as his ongoing offenses while incarcerated," "the fact that [the release facility] is not a locked facility" and that petitioner "is still quite ambulatory." Respondent court did not identify the type of super strike it believed petitioner is likely to commit.

Petitioner filed a petition for writ of mandate on October 31, 2023. He had already filed a notice of appeal. This court ordered that the record on appeal in case No. C099461 be incorporated by reference in this matter. Real party in interest filed a preliminary opposition on December 5, 2023, and petitioner filed a reply to the preliminary opposition on December 6, 2023. This court issued a suggestive *Palma*[2] notice by order on December 18, 2023 (the December 18 order), explaining that from this court's preliminary review, the record "does not appear to support a finding that

---

[2] *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 (*Palma*).

4

petitioner is likely to commit a super strike," and that respondent court appeared to have abused its discretion in refusing to recall petitioner's prison sentence. Citing *Palma, supra*, 36 Cal.3d 171, this court advised respondent court and the parties that it was "considering issuing a peremptory writ of mandate in the first instance" and that respondent court could "avoid issuance of the writ by vacating its September 14, 2023, ruling declining to recall petitioner's sentence, and entering a new and different order recalling petitioner's sentence in accordance with section 1172.2, no later than January 8, 2024." (Italics omitted.)

Meanwhile, on December 21 and 27, 2023, this court received status updates from petitioner's counsel. In the first update, counsel indicated that he had received an e-mail on December 14, 2023, from Dr. Michele Ditomas, CDCR's Chief Medical Executive, advising him that petitioner "is doing remarkably well." Dr. Ditomas explained that petitioner's cancer had not "behave[d] in the way it was expected and has stabilized," and that petitioner had been "discharged from hospice given his improved health." Counsel stated that during a subsequent conversation, Dr. Ditomas would not say whether "this meant that the Department was no longer seeking [petitioner's] compassionate release." Documentation provided by Dr. Ditomas and submitted with counsel's letter indicated that petitioner was "attending to his ADLs [activities of daily life] with minimal to no nursing assistance" at the time of his discharge. The second status update from counsel included a December 26, 2023 letter from CDCR's Director of Health Care Services confirming that "[a]lthough [petitioner] no longer strictly meets hospice criteria, he still suffers from incurable metastatic prostate cancer with an end-of-life trajectory," and "[g]iven [his] incurable prostate cancer, poor liver function, age, and degree of frailty (he relies upon a cane or walker for ambulation) his expected survival remains limited."

On December 29, 2023, real party in interest filed a motion to vacate our December 18 order based on "new evidence." The motion referenced the December 21, 2023 status update and argued that because petitioner's condition had improved and he had been discharged from hospice, the petition should be denied, or in the alternative, the matter should be remanded to respondent court to consider whether petitioner is

5

entitled to compassionate release in light of the new evidence. On January 4, 2024, this court denied the motion to vacate but modified its December 18 order to provide that respondent court could "avoid issuance of the writ by vacating its September 14, 2023, ruling declining to recall petitioner's sentence, and entering a new and different order, no later than January 22, 2024." This court further noted that if respondent court chose to do so, it was not precluded from "considering new evidence concerning petitioner's condition in deciding whether to vacate its order or in fashioning a new and different order." Respondent court was directed to notify this court if it intended to conduct further proceedings consistent with the modified order.

On January 11, 2024, after respondent court notified this court that it "intends to take no further action on this case at this time," we advised the parties that we were considering issuing a peremptory writ of mandate in the first instance and provided additional time to file any further opposition. (See *Palma, supra*, 36 Cal.3d 171.) No further opposition was filed.

## DISCUSSION

Petitioner argues respondent court abused its discretion in declining to recall his sentence based on its finding that he is likely to commit a super strike. In its preliminary opposition to the petition for writ of mandate, real party in interest counters that mandamus relief is unwarranted and unavailable to petitioner.

The uncontested evidence before this court reflects that petitioner has incurable metastatic prostate cancer with an end-of-life trajectory. The additional information provided by petitioner subsequent to issuance of the *Palma* notice continues to reflect this diagnosis and that, despite his stabilization, his expected life expectancy remains limited. Writ relief is warranted where, as here, there is more than a mere possibility that petitioner will pass away before his appeal is decided. (See *Nijmeddin, supra*, 90 Cal.App.5th at p. 79; see also *Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 299-300 ["Conditions prerequisite to the issuance of a writ are a showing there is no adequate remedy at law . . . and the petitioner will suffer an irreparable injury if the writ is not granted. [Citation.]"].) Moreover, while real party in

6

interest is correct that mandate cannot issue to direct a court's exercise of discretion, it is available to remedy an abuse of discretion. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851.)

We review a trial court's refusal to recall a sentence under section 1172.2 for abuse of discretion. (*Nijmeddin, supra*, 90 Cal.App.5th at p. 83.) "A court abuses its discretion when it . . . bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine, supra*, 62 Cal.App.5th at p. 449.) As petitioner points out, his last commitment offense occurred in 1995, and while his 1989 conviction for sodomy by force appears to constitute a super strike (§ 667, subd. (e)(2)(C)(iv)(I); Welf. & Inst. Code, § 6600, subd. (b)), he committed that offense nearly 35 years ago and has not been convicted of, or disciplined for, a sex offense of any kind since then. Given his ability to ambulate short distances and his long history of assaultive behavior, it may be reasonable to conclude that petitioner is likely to assault someone if released. The record, however, does not support a finding that petitioner is likely to commit a super strike, nor does real party in interest claim otherwise. (See *Nijmeddin, supra*, 90 Cal.App.5th at p. 83 ["[T]he statute requires that the assessment of danger be made based on [the inmate's] 'current physical and mental condition,' (§ 1172.2, subd. (b)) not on whether he has in the past 'shown his capability, ability, and willingness to pursue those types of things.' "]) While there is evidence that petitioner's "condition has improved clinically," there is no evidence he is "likely" to commit a super strike.

DISPOSITION

Having complied with the procedural requirements for issuance of a peremptory writ in the first instance, we are authorized to issue a peremptory writ forthwith and without oral argument. (See *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1243-1244; *Palma, supra*, 36 Cal.3d at p. 178.) Let a peremptory writ of mandate issue directing the Sacramento County Superior Court to vacate its ruling

declining to recall petitioner's sentence and to enter a new and different order recalling petitioner's sentence in accordance with Penal Code section 1172.2.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
MESIWALA, J.

8